IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Lourlean Oglesby,<br><br>            Plaintiff,<br><br>    vs.<br><br>Carolyn W. Colvin, Acting<br>Commissioner of Social Security,<br><br>            Defendant. | Civil Action No. 6:14-994-DCN-KFM<br><br>**REPORT OF MAGISTRATE JUDGE** |

This case is before the court for a report and recommendation pursuant to Local Civ. Rule 73.02(B)(2)(a) (D.S.C.), concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The plaintiff brought this action pursuant to Section 205(g) of the Social Security Act, as amended (42 U.S.C. 405(g)) to obtain judicial review of a final decision of the Commissioner of Social Security denying her claim for disability insurance benefits under Title II of the Social Security Act.

## ADMINISTRATIVE PROCEEDINGS

The plaintiff filed an application for disability insurance benefits ("DIB") on August 1, 2011, alleging that she became unable to work on November 18, 2010. The application was denied initially and on reconsideration by the Social Security Administration. On October 31, 2011, the plaintiff requested a hearing. The administrative law judge ("ALJ"), before whom the plaintiff and Benson Hecker, Ph.D., an impartial vocational expert, appeared on August 1, 2012, considered the case de novo and, on November 19, 2012, found that the plaintiff was not under a disability as defined in the Social Security Act, as

---

[1]A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

amended. The ALJ's finding became the final decision of the Commissioner of Social Security when the Appeals Council denied the plaintiff's request for review on January 28, 2014. The plaintiff then filed this action for judicial review.

In making the determination that the plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the ALJ:

(1)     The claimant meets the insured status requirements of the Social Security Act from October 1, 2005, through December 31, 2015.

(2)     The claimant has not engaged in substantial gainful activity since November 18, 2010, the alleged onset date (20 C.F.R. § 404.1571 *et seq.*).

(3)     The claimant has the following severe combination of medically determinable impairments: degenerative disc disease and carpel tunnel syndrome (20 C.F.R. § 404.1520(c)).

(4)     The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526).

(5)     After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a range of light work as defined in 20 C.F.R. § 404.1567(b) (lift/carry, push/pull 20 pounds occasionally, 10 pounds frequently, sit, stand, and walk about 6 hours each in an 8-hour day) except she can only occasionally climb ladders, ropes, or scaffolds, balance, and stoop. She can frequently perform all other postural activities. She can frequently do bilateral handling and fingering, and use her lower extremities to push/pull. Because of medication, she must avoid concentrated exposure to hazards. She has no limitations from her mental impairments.

(6)     The claimant is capable of performing past relevant work as an injection molding machine tender/inspector. This work does not require the performance of work related activities precluded by the claimant's residual functional capacity (20 C.F.R. § 404.1565).

2

(7)    The claimant has not been under a disability, as defined in the Social Security Act, from November 18, 2010, through the date of this decision (20 C.F.R. § 404.1520(g)).

The only issues before the court are whether proper legal standards were applied and whether the final decision of the Commissioner is supported by substantial evidence.

## APPLICABLE LAW

The Social Security Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). "Disability" is defined in 42 U.S.C. § 423(d)(1)(A) as:

the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment that equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment that prevents past relevant work, and (5) has an impairment that prevents him from doing substantial gainful employment. 20 C.F.R. § 404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. *Id.* § 404.1520(a)(4).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. SSR 82–62, 1982 WL 31386, at *3. The plaintiff bears the burden of

3

establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).  He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy.  The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy that the plaintiff can perform despite the existence of impairments that prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).  Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. See *Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)).  The phrase "supported by substantial evidence" is defined as :

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citation omitted).

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings and that the conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964).  If there

4

is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## EVIDENCE PRESENTED

The plaintiff was 51 years old on her alleged disability onset date and 53 years old on the date of the ALJ's decision.  She has a tenth grade education.  The plaintiff's bilateral carpel tunnel surgery is discussed initially at an office visit at Oaktree Orthopedics dated March 31, 2010. During that visit, the plaintiff reported bilateral hand numbness and discomfort (Tr. 262). The record further shows that the plaintiff had a carpel tunnel release on April 15, 2010, on her right hand (Tr. 257).  By May 5, 2010, she report improved sensation in her fingers, and the night pain had resolved in the right hand (Tr. 255).  On May 19, 2010, the plaintiff was seen at Oaktree Orthopedics for a postoperative check for carpal tunnel release surgery that occurred on May 13, 2010, on her left hand. She reported that releases on both hands were doing well (Tr. 252).

On June 2, 2010, the plaintiff was seen for follow-up for both carpal tunnel releases and was happy with her progress (Tr. 251).  On June 30, 2010, she was seen for a follow-up on her bilateral carpel tunnel releases, and she reported that her symptoms were much better on both sides and that she was anxious to return to work soon (Tr. 238).

The record contains medical reports from March 27, 2009, regarding the plaintiff's diagnosis of lumbar HNP, lumbar stenosis, lumbar degenerative disc disease, low back pain-lumbago, and sacroiliitis (Tr. 211).  On September 22, 2009, the plaintiff had surgery for a L4-5 disc herniation and bilateral L5-S1 disc herniation (Tr. 220-23).  Her stitches were removed on October 1, 2009 (Tr. 224).

On November 2, 2009, the plaintiff was seen by Brian C. Johnson, P.A., at Piedmont Spine and Neurosurgical Group in Anderson, South Carolina.  She reported persistent leg discomfort on the left mainly in the left lower calf on the lateral aspect, and she also complained of mild to moderate back discomfort.  She had a difficult time standing

5

from a seated position (Tr. 225).  She saw Mr. Johnson again on December 7, 2009, complaining of persistent left leg pain.  The assessment on that date was that if she failed to show improvement, evaluation by pain management and possibly a spinal cord stimulator were being considered (Tr. 231).

On January 13, 2010, the claimant was seen by Bert Blackwell, M.D., of Pain Management Associates in Anderson with complaints of left leg and hip pain radiating into the left lower extremities associated with paresthesias.  The plaintiff stated she had tried Lyrica 70 mg, but it did not provide relief.  Her Lyrica was increased to 75 mg (Tr. 273).  On February 10, 2010, the plaintiff returned to Pain Management Associates and again reported that the Lyrica was not helping.  She also reported swelling in her right ankle since increasing the Lyrica (Tr. 271).

On February 24, 2010, the plaintiff was seen by Dr. Blackwell for a transforaminal steroid injection, but the decision was made to discontinue the procedure after the plaintiff felt pain in her leg (Tr.  269).  The plaintiff was seen again at Pain Management Associates on March 17, 2010.  She reported that she received no relief from the injection and felt like the injection aggravated her pain.  She also complained that her right knee and ankle were beginning to swell (Tr, 264).

On April 13, 2010, the plaintiff was seen by Lee Acres, N.P., at Pain Management Associates.  The plaintiff reported that she was on Oxycodone for left leg pain and that it did not seem to relieve pain.  She continued to have low back pain and left radicular pain.  She was diagnosed with having antalgic gait and was using a cane on the right side (Tr. 259).

On May 11, 2010, the plaintiff saw Nurse Acres again.  The report indicated that the plaintiff was doing well with current medication regimen, which was continued. However, her Lyrica was increased to 200 mg, and she was continued to use her cane (Tr. 253).

6

On June 29, 2010, the plaintiff visited Pain Management Associates and saw Jill Kessler, F.N.P., for a follow-up on left leg pain. The plaintiff reported that for the last ten months since she had surgery her medication was working, but that she had break-through pain after six hours, which was two hours before the next dosage. The treatment notes also indicate no history of illicit drug use or prescription misuse (Tr. 249).

On July 27, 2010, the plaintiff went back to Nurse Kessler. She reported that her right hip was hurting her, which she rated as pain being a 10/10 and a 5/10 with medication. The plaintiff noted that she worked third shift and had trouble sleeping (Tr. 247). On August 25, 2010, the plaintiff saw Nurse Kessler for follow up on her bilateral leg pain since surgery almost a year earlier, and she rated the pain as a 9/10 with medication and complained of bilateral leg and feet edema, worse on the right than the left. Nurse Kessler reported the plaintiff's pain behaviors of flinching, grimacing, guarded movements, holding and supporting the affected area, stiff movements, and slow gait (Tr. 244-45).

On September 17, 2010, the plaintiff had a follow-up with Kenneth A. Marshall, M.D., at Pain Management Associates. She reported increased left leg pain, which was more severe in the calf and foot. The plaintiff rated the pain as being unbearable (Tr. 242-43). She was sent for an electrodiagnostic study on September 30, 2010, by Jay Patel, M.D. Dr. Patel found some non-specific and non-conclusive abnormalities (Tr. 240).

On October 15, 2010, the claimant was seen by Dr. Marshall. She reported that the pain was located mostly in the left leg and ankle and that the medications were working well for pain (Tr. 237-39).

On November 17, 2010, the plaintiff was seen for follow-up at Pain Management Associates. She reported that her pain was about the same and that she had good days and bad days. The plaintiff reported the pain level as 8/10 (Tr. 235-36).

7

On December 15, 2010, the plaintiff had another follow-up and reported that her pain was still there. She stated that some days it was ok and on some days it hurt. The plaintiff reported the pain level as being 7/10. She was prescribed Percocet, one by mouth every four hours as needed for severe pain, and was instructed to return in four weeks (Tr. 233-34).

### State Agency Opinion

On February 25, 2011, State agency medical consultant Seham El-Ibiary, M.D., reviewed the plaintiff's medical records and found that the plaintiff could perform light work, with restriction of use of her lower extremities to frequent use of foot controls, occasional balancing, stooping, and kneeling, frequent bilateral fingering and handling, occasional climbing of ladders, ropes, and scaffolds, and avoidance of concentrated exposure to hazards (Tr. 283-90). In making his residual functional capacity ("RFC") finding, the ALJ adopted Dr. El-Ibiary's opinion (Tr. 15).

### Administrative Hearing

At the August 2012 administrative hearing (Tr. 57-93), the plaintiff testified that she lived with her 20 year old son, 18 year old daughter, and two year old niece (Tr. 61). She was 5'6" tall and weighed 220 pounds. She stated that her weight did not limit her in any way (Tr. 63). She alleged disability due to her back pain (Tr. 71). She took over-the-counter medications, such as Advil or Tylenol, which helped her pain (Tr. 86). The plaintiff testified that she was "released" from her job on November 18, 2010 (her alleged disability onset date), when the company merged with another company and because she failed a drug test (Tr. 64-66). The plaintiff was denied unemployment benefits based upon the failed drug test (Tr. 65).

The plaintiff's activities of daily living included reading, caring for her dog, preparing meals, cleaning her home, visiting family, and watching the television (Tr. 78-79,

8

85-86). Additionally, she drove her daughter and son to and from work five days per week (Tr. 64).

The vocational expert ("VE") testified that the plaintiff's past relevant work as a hand trimmer and inspector was unskilled and performed at the light exertion level (Tr. 90). The ALJ asked the VE to consider a hypothetical individual of the plaintiff's vocational profile, who could perform light work, involving only occasionally balancing; stooping; and climbing of ladders, ropes, or scaffolds; frequently performing bilateral handling; frequently using her lower extremities to push/pull; and avoiding concentrated exposure to hazards. In response, the VE testified that the individual could perform the plaintiff's past relevant work as an inspector, but not a hand trimmer (Tr. 91). The VE further testified that such an individual could perform other work that existed in significant numbers in the national economy and gave the examples of a cashier, night cleaner, and packer (Tr. 91-92).

## ANALYSIS

The plaintiff argues that the ALJ erred by (1) failing to fully develop the medical record; (2) failing to fully evaluate her allegations of pain; and (3) failing to properly assess her credibility.

### *Developing the Record*

The plaintiff argues that the ALJ failed to develop the record. Specifically, the plaintiff asserts that the ALJ was under a duty to develop the record from her last examination, dated December 15, 2010, up to the hearing date (pl. brief 7).

In *Cook v. Heckler*, the Fourth Circuit noted that an ALJ has a "responsibility to help develop the evidence." 783 F.2d 1168, 1173 (4th Cir.1986). The court stated that "[t]his circuit has held that the ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely on evidence submitted by the claimant when that evidence is inadequate." *Id*. However, it is a claimant's responsibility to prove to the Commissioner that he or she is disabled. 20 C.F.R. §

9

404.1512(a). "Although the ALJ has a duty to fully and fairly develop the record, he is not required to act as plaintiff's counsel." *Lichlyter v. Astrue*, No. 6:11-cv-597, 2012 WL 4442521, at *18 (S.D. W.Va. May 22, 2012) (citation omitted), *adopted by* 2012 WL 4378142 (S.D. W. Va. Sept. 25, 2012). In assuring that the record was fully developed, the ALJ gave the plaintiff's counsel the opportunity to develop the record further or to request further development if the record was insufficient. The ALJ asked the plaintiff's counsel whether there was any additional outstanding evidence, to which counsel responded that all the evidence had been submitted (Tr. 60). The ALJ further asked the plaintiff's attorney whether there were any preliminary matters that needed to be resolved (Tr. 60), to which the plaintiff's attorney responded, "No, sir" (Tr. 61). Remand for failure to develop the record may also be unwarranted where the claimant cannot show that she was prejudiced by the failure. *Cary v. Apfel*, 230 F.3d 131, 142 (5th Cir.2000) (citations omitted). "To establish prejudice, a claimant must demonstrate that ... she could and would have adduced evidence that might have altered the result." *Id*. The plaintiff has made no such showing here.

The regulations state: "If your medical sources cannot or will not give us sufficient medical evidence about your impairment for us to determine whether you are disabled or blind, we may ask you to have one or more physical or mental examinations or tests." 20 C.F.R. § 404.1517. Situations that may require a consultative examination are when one is needed "to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow us to make a determination or decision on your claim." *Id.* § 404.1519a(b). Furthermore, "the ALJ has discretion in deciding whether to order a consultative examination." *Bishop v. Barnhart*, 78 F. App'x 265, 268 (4th Cir. 2003). After reviewing the available information contained in the record, including the medical evidence and the plaintiff's own testimony, the ALJ clearly decided that he had enough information to conclude that the plaintiff had not met her burden and was not disabled.

10

Based upon the foregoing, the undersigned finds that the ALJ did not commit error in this regard and reasonably exercised his discretion in not ordering a consultative examination.

### *Credibility*

The plaintiff next argues that the ALJ failed to fully evaluate her allegations of pain and "did not use logical criteria to disregard [her credibility]" (pl. brief 8-12). The Fourth Circuit Court of Appeals has stated as follows with regard to the analysis of a claimant's subjective complaints:

> [T]he determination of whether a person is disabled by pain or other symptoms is a two-step process. First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged. . . . It is only after a claimant has met her threshold obligation of showing by objective medical evidence a medical impairment reasonably likely to cause the pain claimed, that the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated.

*Craig v. Chater*, 76 F.3d 585, 593, 595 (4th Cir. 1996). In *Hines v. Barnhart*, 453 F.3d 559 (4th Cir. 2006), a Fourth Circuit Court of Appeals panel held, "Having met his threshold obligation of showing by objective medical evidence a condition reasonably likely to cause the pain claimed, [the claimant] was entitled to rely exclusively on subjective evidence to prove the second part of the test, i.e., that his pain [was] so continuous and/or severe that it prevent[ed] him from working a full eight-hour day." 453 F.3d at 565. However, the court in *Hines* also acknowledged that "'[o]bjective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available should be obtained and considered.'" *Id.* at 564 (quoting SSR 90-1p, 1990 WL 300812).

11

The court further acknowledged:

> While objective evidence is not mandatory at the second step of the test, "[t]his is not to say, however, that objective medical evidence and other objective evidence are not crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs her ability to work. They most certainly are. Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers."

*Id*. at 565 n.3 (quoting *Craig*, 76 F.3d at 595). *See Johnson v. Barnhart*, 434 F.3d 650, 658 (4th Cir. 2005); 20 C.F.R. § 404.1529(c)(2) ("We must always attempt to obtain objective medical evidence and, when it is obtained, we will consider it in reaching a conclusion as to whether you are disabled. However, we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements."); SSR 96-7p, 1996 WL 374186, at *6 ("[T]he absence of objective medical evidence supporting an individual's statements about the intensity and persistence of pain or other symptoms is only one factor that the adjudicator must consider in assessing an individual's credibility and must be considered in the context of all the evidence.").

A claimant's symptoms, including pain, are considered to diminish his capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical evidence and other evidence. 20 C.F.R. § 404.1529(c)(4). Furthermore, "a formalistic factor-by-factor recitation of the evidence" is unnecessary as long as the ALJ "sets forth the specific evidence [he] relies on in evaluating the claimant's credibility." *White v. Massanari*, 271 F.3d 1256, 1261 (10th Cir. 2001). Social Security Ruling 96-7p states that the ALJ's decision "must contain specific reasons for the finding on credibility,

12

supported by the evidence in the case record." 1996 WL 374186, at *4.  Furthermore, it "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight." *Id.*

The factors to be considered by an ALJ when assessing the credibility of an individual's statements include the following:

(1)    the individual's daily activities;

(2)    the location, duration, frequency, and intensity of the individual's pain or other symptoms;

(3)    factors that precipitate and aggravate the symptoms;

(4)    the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

(5)    treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

(6)    any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

(7)    any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

*Id.* at *3.  *See* 20 C.F.R. § 404.1529(c).

The ALJ considered the plaintiff's subjective complaints and found that while she had medically determinable impairments that could reasonably be expected to cause the alleged symptoms, her statements concerning the intensity, persistence, and limiting effects of these symptoms were not fully credible (Tr. 20).  The ALJ did not reject the plaintiff's testimony as to the intensity and persistence of her pain based solely on the objective evidence. *See* 20 C.F.R. § 404.1529(c)(2). Rather, the ALJ considered a number of factors in making the credibility finding.  Specifically, the ALJ considered the objective

medical evidence, the plaintiff's activities of daily living, her use of over-the-counter medications to "ease the pain," her return to work with no manipulative limitations following her bilateral carpal tunnel surgical releases, her return to work following corrective surgery for her degenerative disc disease, her failure to go to physical therapy, the fact she was fired from her job rather than leaving it because of pain or an inability to perform her job duties, and the fact that no treating or examining physician offered an opinion regarding the plaintiff's work-related limitations (Tr. 16-21).

Consistent with the ALJ's finding, the objective medical evidence reflects that Oxycodone, Advil, and Tylenol helped to control the plaintiff's leg pain (Tr. 86, 253). An EMG of the plaintiff's lower extremities in September 2010 was normal, with no evidence of radiculopathy (Tr. 240). Examination findings in September 2010 following her back surgery revealed only mild tenderness in her lumbar area; full and painless range of motion of the thoracic and lumbar spine; and normal stability, strength, tone, and gait (Tr. 241-42). As noted by the ALJ, the plaintiff returned to work following her surgeries (Tr. 71-73).

The ALJ also considered the plaintiff's activities of daily living and found them to be inconsistent with the acts of a person with a disabling impairment (Tr. 17). Following her back and hand surgeries, the plaintiff returned to her job doing light exertional work, continued to drive both her son and daughter to and from work five days per week, and drove to church every other Sunday (Tr. 64, 78-79, 84-86, 165, 210, 212). She cleaned, cooked, grocery shopped, visited family, and cared for her two-year-old niece (Tr. 84-85, 78-79, 207). Furthermore, she testified that she was terminated from her last job, prior to seeking DIB, at least in part because she failed a drug test (Tr. 64-66).

Based upon the foregoing, the undersigned finds that the ALJ's analysis of the plaintiff's subjective complaints is based upon substantial evidence and without legal error.

14

***Substantial Evidence***

The ALJ found that the plaintiff had the RFC to perform a reduced range of light work (Tr. 15-20). In making this finding, he considered the plaintiff's severe impairments, degenerative disc disease and carpal tunnel syndrome, as well as her non-severe impairments, including her morbid obesity and knee pain, and fully discussed the medical evidence (Tr. 13-21). The ALJ also considered the plaintiff's subjective complaints and, as discussed above, reasonably found that the plaintiff's complaints were not fully credible. The ALJ adopted Dr. El-Ibiary's opinion, noting that while Dr. El-Ibiary did not examine or treat the plaintiff, he is a specialist in internal medicine and he considered the plaintiff's complete medical record (Tr. 15, 21). The undersigned finds that the ALJ's RFC finding is based upon substantial evidence.

At step four of the sequential evaluation, the ALJ must compare the plaintiff's RFC assessment to the mental and physical demands of the plaintiff's past relevant work to determine if she is still capable of performing that work. 20 C.F.R. § 404.1520(f). If the claimant can perform her past relevant work, the ALJ will find her not disabled at this step. *Id*. Here, the ALJ found the plaintiff not disabled at this step, finding that the plaintiff could perform her past relevant work as an injection molding machine tender as it is generally performed (Tr. 21). Further, the ALJ alternatively found, based upon the VE's testimony, that the plaintiff could perform other jobs that exist in significant numbers in the national economy, including the unskilled occupations of cashier, night cleaner, and as a packing-line worker (Tr. 22). The ALJ's findings in this regard are based upon substantial evidence.

## CONCLUSION AND RECOMMENDATION

This court finds that the Commissioner's decision is based upon substantial evidence and free of legal error. Now, therefore, based upon the foregoing,

IT IS RECOMMENDED that the Commissioner's decision be affirmed.

IT IS SO RECOMMENDED.

s/ Kevin F. McDonald
United States Magistrate Judge

February 27, 2015
Greenville, South Carolina